NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RASHEEN PEPPERS, et al., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> : <br> COREY A. BOOKER, et al., : <br> : <br> Defendants. : <br> : | Civil Action No. 11-3207 (CCC) <br><br> OPINION |

**CECCHI, District Judge.**

**I.   INTRODUCTION**

This matter comes before the Court by way of Defendants' motion to dismiss Plaintiffs' Verified Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. The Court has considered the submissions made in support of and in opposition to the instant motion.¹ Based on the reasons set forth below, Defendants' motion to dismiss is granted. Plaintiffs are granted fourteen (14) days to file an Amended Complaint to cure the deficiencies discussed below.

**II.   BACKGROUND**

The Plaintiffs in this matter are Rasheen Peppers ("Peppers"), Darnell Henry ("Henry"), Joseph Hadley ("Hadley"), Kevin Lassiter ("Lassiter"), and Vincent Cordi ("Cordi")

---

¹ The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

(collectively, "Plaintiffs"). Plaintiffs have at all times relevant to these proceedings been police officers employed by the Newark Police Department, within the City of Newark, New Jersey. (Compl. ¶¶ 5-9.) Plaintiffs assert that they were transferred and demoted in retaliation for their political support of Mayor Corey Booker's opposing candidate, Clifford Minor, in the 2010 mayoral election. (*See generally*, Compl.) Additionally, Plaintiffs allege that Newark Police Director Gary F. McCarthy ordered their transfers and demotions at either the assistance of, or with the approval of Mayor Corey Booker. (Compl. ¶ 60.)

Officer Peppers is a former detective for the Newark Police Department Fugitive Squad. (Compl. ¶ 14.) On approximately May 12, 2010, Peppers was transferred to a position in the cell blocks. (*Id.* at 15.) As a result of this transfer, Peppers lost his detective title, his detective badge, his detective stipend, and his gas allowance. (Compl. ¶ 20.) After his time working in the cell blocks, Peppers was assigned as court officer to Judge Marylin Williams, until he was transferred to his current position on the B2 squad. (Compl. ¶¶ 22-23.) Peppers asserts that his transfers were not handled within department protocol and resulted in abrupt shift changes and a demotion. (Compl. ¶¶ 19, 24.)

Peppers supported the candidacy of Clifford Minor in his election against incumbent Mayor Corey Booker. (Compl. ¶ 18.) Plaintiffs allege that Peppers posted information pertaining to his support for Clifford Minor on his Facebook page where he was friends with over 5,000 people. (*Id.*) Additionally, it is asserted that Peppers was a minor celebrity due to his appearance on a reality television show. (*Id.*) Plaintiffs claim that Lieutenant John Rodriguez informed Peppers that his transfers were politically motivated. (Compl. ¶ 28.)

Officer Henry was a Sergeant and member of the Detective Beaureu, and ultimately was the head of the newly formed cold case unit. (Compl. ¶¶ 29-30.) In 2010, Henry received a

commendation from the Essex County Prosecutor's office for arrests he had made on a cold case. (Compl. ¶ 32.) However, Henry was ultimately transferred to patrol and as a result, lost his detective title, his detective's badge, his detective stipend, and gas allowance. (Compl. ¶ 39.) Former mayoral candidate Clifford Minor is Henry's godfather. (*Id.*) Additionally, Plaintiffs allege that Henry was informed by Jermaine James, acting Deputy Chief of Staff for Mayor Corey Booker, that he knew Henry was "Minor's guy." (Compl. ¶ 34.)

Officer Hadley is a former Detective who worked within the Cold Case department of the Newark Police Department. (Compl. ¶ 40.) Hadley has since been transferred to patrol resulting in the loss of his detective title, his detective's badge, his detective's stipend and gas allowance. (Compl. ¶ 40.) During the 2010 Mayoral election, Hadley is alleged to have purchased tickets to a Clifford Minor Fundraiser. (Compl. ¶ 42.) Plaintiffs assert that Tharien Karim Arnold, an alleged political ally of Corey Booker, told Hadley that his transfer was because of his support for Clifford Minor. (Compl. ¶ 44.)

Officer Lassiter was a detective working in the Homicide Department until May 2010 when he was transferred to street patrol. (Compl. ¶ 48.) This transfer resulted in the loss of Lassiter's Detective title, Detective's badge, Detective stipend, and gas allowance. (Compl. ¶ 54.) Lassiter purchased tickets to a Clifford Minor Fundraiser. (Compl. ¶ 51.) Plaintiffs allege that people knew of Lassiter's purchase. (*Id.*)

Officer Cordi worked in the Second Precinct of the Newark Police Department until he was transferred to the Fifth Precinct in 2010. (Compl. ¶¶ 55, 58) Plaintiffs assert that Cordi was confronted by Anibol Ramos, Jr., an alleged political ally of Mayor Corey Booker, regarding Cordi's support for Clifford Minor. (Compl. ¶ 57.) Additionally, Cordi claims to have sold

tickets to Clifford Minor Fundraisers, attended Minor fundraisers, and assisted in Minor's campaign. (Compl. ¶ 56.)

### III. LEGAL STANDARDS

#### A. Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. *Iqbal,* 129 S. Ct. at 1949. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Thus, in assessing a complaint's sufficiency through the 12(b)(6) framework, a court must consider only those allegations, which are factual in nature, ignoring allegations that are conclusory or merely restatements of the elements of the claim.

To determine the sufficiency of a complaint a court must engage in a three step analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal,* 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. At this step, the court must disregard "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," leaving only

4

factual allegations for the court's consideration. *Santiago v. Warminster Tp.*, 629 F.3d 121, 131 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 130.

In determining whether the facts alleged indicate an entitlement to relief, the court must determine whether a claim is facially plausible. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Santiago*, 629 F.3d. at 132 (quoting *Iqbal*, 129 S.Ct. at 1949). "Determining whether a complaint states a plausible claim is context-specific," but the reviewing court must draw on its judicial experience to determine whether the well-pleaded facts when accepted as true support the inference that the alleged misconduct is plausible and not "merely possible". *Iqbal*, 629 F.3d. at 1949.

B.  <u>Claims Alleging a Violation of 42 U.S.C. § 1983</u>

Section 1983 of the United States Code ("Section 1983"), states in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. Section 1983 does not in and of itself create any rights; rather Section 1983 merely acts as a vehicle for relief when other pre-existing rights are violated. Thus, to establish a violation of Section 1983, a plaintiff must establish "that she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Perna v. Twp. of Montclair*, 2006 WL 2806276, at *5 (D.N.J. Sep. 28, 2006).

5

Additionally, to sustain an action under Section 1983, a plaintiff must allege the deprivation was committed under color of state law. *Id.* Thus, in a Section 1983 inquiry, the examination is twofold. First the court must engage the appropriate legal analysis of the constitutional violation alleged. Second the court must determine whether this violation occurred under color of law.

C. <u>First Amendment</u>

"A plaintiff may bring a First Amendment retaliation claim under [section] 1983 when a state actor retaliates against the plaintiff based on the plaintiff's protected speech." *Thomas v. Newark Police Dept.*, 2011 WL 5526325, at *6 (D.N.J. Nov. 10, 2011). The Third Circuit applies a three-part test when assessing a public employee's claim of retaliation based on conduct that is protected by the First Amendment. "First, the plaintiff must show that she engaged in a protected activity and that the government responded with retaliation. Second, the plaintiff must show that her protected activity was a "substantial factor in motivating" the alleged retaliation." *Perna*, 2006 WL 2806276 at *5. Where the plaintiff satisfies elements one and two, the plaintiff's claim may nonetheless be defeated where the defendant can establish "that the same action would have taken place even in the absence of the protected conduct." *Id.*

An essential inquiry for the court when assessing a Section 1983 claim arising out of a violation of a right to freedom of speech is whether the plaintiff has engaged in a protected activity; that activity being protected speech. A statement made by a public employee is considered protected speech when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Lee v. The County of Passaic*, 2011 WL 3159130,

at *3 (D.N.J. July 26, 2011). Only after engaging in this analysis may the court continue on to the final two steps of the Third Circuit's retaliation inquiry.

The court must engage in a similar analysis as it pertains to claims of retaliation based on a violation of a plaintiff's First Amendment right to association. Therefore, employees claiming that retaliatory action "was taken against them based upon the exercise of their associational rights must show that they were engaged in constitutionally protected conduct, which was a 'substantial' or 'motivating factor' in the government employer's decision. *Lee*, 2011 WL 3159130 at *4.

## IV. DISCUSSION

### A. Liability of the City of Newark

Defendants assert that Plaintiffs' claims against the City of Newark should not survive a 12(b)(6) analysis, as Plaintiffs have failed to allege sufficient facts to support municipal liability in a Section 1983 action. (Defs.' Motion to Dismiss, 6-7.) More specifically, Defendants assert that Plaintiffs "failed to make any factual allegation to support the existence of a municipal policy or custom." (Defs.' Motion to Dismiss, 6.) Defendants further contend that the Plaintiffs' failure to raise facts to support the existence of a custom or policy reflects an attempt to hold the City of Newark vicariously liable for one of its employees. (*Id.*) Defendants ask the Court to dismiss all claims as they pertain to the City of Newark.

A plaintiff may maintain a claim under Section 1983 where the municipality "established a policy or custom that deprived" them of their constitutional rights. *Fox v. Carter*, 2012 WL 589563, at *7 (D.N.J. Feb. 22, 2012). Thus, a claim against a municipality requires a plaintiff to assert some direct involvement from the municipality either through the institution of a policy or custom, or through the acts of an individual with policy making authority. Furthermore, a

plaintiff must assert that the municipality "acted deliberately and was the moving force behind the deprivation," and that the plaintiff's "injury was caused by the identified policy or custom." *Fox*, 2012 WL 589563, at *7.

A municipality may be found liable in one of three circumstances. First, municipal liability will apply where an employee acted "pursuant to a formal government policy or a standard operating procedure." *D'Orazio v. Washington Tp.*, 2010 WL 3982287, at *11 (D.N.J. October 7, 2010). Second, municipal liability may be found where an individual with policy-making authority acted to violate the plaintiff's constitutional rights. *Id*. Finally, liability may be found where "an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes." *Id*.

To maintain their claims under the first theory of municipal liability, Plaintiffs must allege sufficient facts to support the reasonable inference that Plaintiffs' constitutional harms were a result of the implementation or execution of a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom. *Beck v. City of Pittsburg*, 89 F.3d 966, 966 (3d Cir. 1996). Conduct will be considered custom where the practices are so fixed and permanent "as to virtually constitute law." *Id*. This means that custom is not an official rule or policy but is established where a practice is so common and well-settled that it becomes formal and gains legitimacy. Custom may also be established through knowledge and acquiescence. *Id*. at 971. Conversely, liability based on the implementation of a policy exists only when a "decisionmaker possess[ing] final authority" established "an official proclamation, policy, or edict." *Id*. Therefore, a plaintiff must identify the relevant custom or policy. *Santiago*, 629 F.3d at 135 (citing *McGreal v. Ostrov,* 368 F.3d 657, 685 (7th Cir.2004)).

Here, Plaintiffs' complaint fails to assert facts that would support the inference that any constitutional harms alleged were the result of a department policy or custom. While Plaintiffs allege five instances of termination and demotion based on political association, this does not rise to the level of a custom that is so permanent and well-settled "as to virtually constitute law." *Beck*, 89 F.3d at 966. In fact, Plaintiffs concede that their transfers were not normal and tended to violate customs and policies of the department. (Compl. ¶¶ 38, 45, 53, 59.) Additionally, Plaintiffs' factual assertions failed to establish that their harm was the result of department policy.

With regard to the second theory of municipal liability, Plaintiffs note in their opposition that Director McCarthy is a decision-maker possessing final authority. Liability may be established where a plaintiff demonstrates that an individual with "final policy making authority made a decision that had a direct causal link to the alleged constitutional violation." *Thomas*, 2011 WL 5526325 at *5. Under this form of municipal liability, a plaintiff must first allege that the decision-maker is a final policy maker. *McGreal*, 368 F.3d at 685. After policymaker status has been established, the inquiry turns to whether the singular acts or decisions of the decision-maker constitute official municipal policy. *Id*. The reason for imputing liability to the municipality in these circumstances is that the nature of the policymaker's position makes their decisions and actions inherently official in nature; thus making their acts representative of the municipality.

Plaintiffs, citing *LaPosta v. Borough of Roseland*, No. 06-CV-5827, 2009 WL 2843901 (D.N.J. Sept. 1, 2009), contend that Director McCarthy's acts of ordering the transfers and demotions constitute official municipal policy. (Pl. Opp., 9.) In *LaPosta*, the sole allegation regarding the policymaker's involvement was that he made a statement in support of a policy

that prevented officers from being influenced by the P.B.A. *LaPosta*, 2009 WL 2843901, at *3. Defendants argue that the instant case is distinguishable from *LaPosta* because Plaintiffs did not allege that Director McCarthy made a statement promoting a policy which caused the constitutional violation. (Def. Reply, 6.)

The Court finds that McCarthy's orders to transfer or demote Plaintiffs are not enough to infer that the Newark Police Department had a policy in effect that caused Plaintiffs' constitutional harm. That is, even though Plaintiffs allege Director McCarthy was responsible for ordering the transfers and demotions of each Plaintiff, this is not sufficient to sustain a claim that there was a department-wide policy. Accordingly, Defendants' motion to dismiss on this basis is therefore granted.

B. Liability of Newark Police Department

Defendants ask the Court to dismiss all claims against the Newark Police Department, asserting that the Police Department is not a properly named defendant in this action. (Defs.' Reply Mem. 4.) In a Section 1983 claim, police departments may not be named defendants in conjunction with municipalities because police departments are merely instruments of municipalities. *DeBellis v. Kulp,* 166 F.Supp.2d 255, 264 (E.D.Pa.2001). As such, "municipal police departments are not separate entities from the municipalities." *Henderson v. Voorhees Twp.*, 2007 WL 2177354, at *2 (D.N.J. July, 27 2007) *N.J.S.A.* 40A:14-118. Plaintiffs, having named the City of Newark in their complaint, cannot sustain a separate claim against the Newark Police Department as an entity that is distinct from The City of Newark. Thus, the Court grants Defendants' motion to dismiss all claims, as they pertain to the Newark Police Department.

C. Liability of Individually-Named Defendants

Defendants assert that Plaintiffs' claims should be dismissed as they pertain to the individually-named Defendants, Booker and McCarthy. (Defs.' Motion to Dismiss, 8.) Defendants assert that Plaintiffs have failed to raise sufficient non-conclusory factual assertions of specific actions taken by the Mayor and Director that led to the alleged constitutional deprivation. (*Id.*) Furthermore, Defendants argue that Plaintiffs' Complaint lacks any factual statements demonstrating that the Mayor and Director had knowledge of or approved of any misconduct. (*Id.*)

Government officials cannot "be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," rather a plaintiff must show that each government official has violated the constitution through their own individual actions. *Cruz v. County of Bergen*, 2011 WL 1211396, at *2 (D.N.J. March 29, 2011) (quoting *Iqbal*, 129 S.Ct. at 1948). To survive a motion to dismiss, a section 1983 claim against named defendants in their individual capacities, a plaintiff must allege sufficient factual matter to support a claim for one of the two forms of supervisory liability. The first form of supervisory liability requires the plaintiff to allege that the supervisor "established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." *Santiago*, 629 F.3d at 129. This form of supervisory liability does not require the plaintiff to allege a direct act by the defendant that caused the constitutional rights violation. Rather, a plaintiff may establish liability under this first form by alleging that the defendant's policy, practice, or custom, when enforced by subordinates or third parties, caused the plaintiffs harm under section 1983. *Id.*

As previously discussed, a practice will constitute custom when it is "so permanent and well-settled as to virtually constitute law." *Beck*, 89 F.3d at 971. Custom "may also be established by evidence of knowledge and acquiescence." *Id.* Additionally, the Court may find

11

an official policy if the Director and Mayor are decision makers enjoying final authority to establish policy, and they issued "an official proclamation, policy, or edict." *Id.*

The second form of supervisory liability under section 1983 requires a plaintiff to allege that the supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as a person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago*, 629 F.3d at 129. To establish a claim under the second form of supervisory liability, Plaintiffs would have to allege a direct and affirmative act by the Defendants that resulted in an infringement of Plaintiffs' constitutional rights. Under this form of supervisory liability, a defendant is held liable for their direct acts whether in the form of acquiescence or direct participation. Additionally, supervisory liability requires the plaintiff to show "a causal connection between the supervisor's actions and the violation of plaintiff's rights." *Okocci v. Klein*, 270 F. Supp. 2d 603, 612 (E.D.PA. 2003).

Plaintiffs assert that their transfers and demotions were ordered "at either the insistence or with the approval of Mayor Corey Booker." (Compl. ¶ 60.) This statement fails to provide a sufficient basis to maintain a claim against the Mayor consistent with the first form of supervisory liability. Plaintiffs concede that their transfers were irregular and done outside the normal procedures of the Police Department. (Compl. ¶¶ 19, 37, 45, 53, 59.) Additionally, Plaintiffs failed to present any factual assertions that would support the inference of an ongoing pattern of transferring officers based on their political preferences. Thus, the transfers of Plaintiffs cannot be said to be "so permanent and well-settled as to virtually constitute law." *Beck*, 89 F.3d at 971. Additionally, Plaintiffs have acknowledged that it is the Director, and not the Mayor who enjoys final authority over the promulgation and enforcement of policy within the Police Department. (*See* Pl. Opp., 9.) Thus, the Mayor's alleged "insistence" on the

transfers cannot constitute official policy within the meaning of Section 1983. (*See* Compl. ¶ 60.)

Plaintiff's factual assertions, taken as true, are not sufficient to sustain claims against Booker on the basis of knowledge and acquiescence. Plaintiffs assert that the Mayor insisted on or approved of their transfers and demotions. These factual assertions, without more, are not sufficient to establish a plausible claim against Mayor Booker.

Plaintiffs allege that their transfers and demotions were ordered by Director McCarthy. (Pl. Opp., 9.) As stated previously, these transfers were inconsistent with traditional department policy and cannot be seen as permanent and well-settled. The facts presented by Plaintiff are insufficient to support a plausible claim that the Director established or maintained a policy, which caused the Plaintiffs' constitutional harm. Thus, the Court grants Defendants' motion to dismiss the claims as they pertain to Director McCarthy and Mayor Booker.

D. <u>Defendants' Knowledge</u>

An essential, underlying element to Plaintiffs' claims is that Defendants had knowledge of Plaintiffs' political affiliation and political speech. *See Thomas*, 2011 WL 5526325 at *8. To support the theory that the transfers and demotions of Plaintiffs were in retaliation for their political association, Defendants would have to have knowledge of their political association prior to the transfers and demotions. *Id.*

Plaintiffs allege that Peppers had posted his support for Clifford Minor on his Facebook page. (Compl. ¶ 18.) Additionally, Plaintiffs contend that at the time of Peppers' Facebook posting he had over 5,000 friends on Facebook and was a minor celebrity due to an appearance on a reality television show. (*Id.*) The complaint also asserts that Henry is the godson of Clifford Minor and that Mayor Booker's Deputy Chief of Staff discussed Henry's political

support for Clifford Minor with him. (Compl. ¶ 33.) The Court finds that these facts do not directly address Defendants' knowledge and thus, are not sufficient to support claims against Defendants.

Regarding the remaining parties, Plaintiffs allege that Hadley, Lassiter, and Cordi were known to have bought tickets to and/or attended Clifford Minor Fundraisers. (Compl. ¶ 42.) Plaintiffs also allege that members of the Mayor's political team confronted Hadley and Cordi regarding their support for Clifford Minor. (Compl. ¶¶ 44, 57.) With regard to Lassiter, the complaint makes the conclusory assertion that, "[o]fficer Lassiter was known to have bought tickets to a Minor fundraiser in 2010." (Compl. ¶ 51.) The Court finds that these very generalized assertions lack the necessary factual support for the inference that Defendants had the requisite knowledge of Hadley's, Cordi's, and Lassiter's political association. Thus this Court dismisses all claims as they pertain to Defendants Lassiter, Hadley, and Cordi.

## V.  CONCLUSION

Based on the reasons set forth above, Defendants' motion to dismiss Plaintiffs' Complaint is granted. To the extent the deficiencies in such claims can be cured by way of amendment, Plaintiffs are granted fourteen days to reinstate this matter and file an Amended Complaint solely for purposes of amending such claims.

An appropriate Order accompanies this Opinion.

_____
**CLAIRE C. CECCHI, U.S.D.J.**

DATED: May 17, 2012